*453 Opinion of
the Court.
ON the 17th day of October, 1809, James Skidmore and Andrew Feland entered into articles of agreement, in which Skidmore engaged to build a good, overshot grist mill for Feland, on Pettit’s Gap branch, completely finished in a good, workman-like manner, and to be made to grind equal to any other mill whatsoever, on such a stream as that is; and the mill was to be finished on the first day of December next ensuing; and if the parties could not agree on the prices, they were to abide by the judgment of James Stone and Patrick Hite. Feland was to let Skidmore have a certain tract of land on Green river, containing seventy-five acres, more or less, at the price of one hundred pounds, to be paid for in the price of the mill, and other carpenter’s work to be done on Feland’s farm, valued by the same men, and the balance, if any, in good trade; and Feland was to make to Skidmore a good title in fee-simple for the land. Skidmore went on to do part of the labor on the mill, but did not complete it; and, also, some carpen *454 ter’s work on a building of Feland, which was not completed. Feland put Skidmore into possession of the land, or allowed him to receive the rents, shortly after the contract. Feland declined building his mill ultimately, and in the year 1814, sold and conveyed the land to George Moore, who had knowledge of Skidmore’s contract, and who, forthwith, by warrant of forcible detainer, evicted Skidmore, who then filed this bill against Moore and Feland, claiming a specific execution of his contract, and a conveyance against Moore. He charges that he complied with his part of the contract, as far as was practicable, and performed much of the labor, taking the timber from the stump, and would have finished the mill if he had been permitted by the defendant, Feland, whom he required frequently to get ready and make preparations necessary on his part, to complete the work, and that Feland as frequently postponed it; that he waited two or three years under assurances that Feland would get ready, but he always failed; that the carpenter’s work and mill, so far as he progressed, was worth one hundred pounds and more. He alleges he did do all the work about it which could be done, until the defendant, Feland, prepared for the erection and organization of the machinery, which Feland failed to do, until the sale to Moore. He avers, he was always and still is ready to complete the work, and that he had pressed Feland to get ready in vain.
But if a court of equity should sustain his bill, and decree a specific execution of the contract in his favor, on his paying the damages that his default had occasioned, it would be unequal and unjust, in decreeing the primary and highest relief to one, and that one the defaulting party, and merely the secondary relief to the other.
Moore and Feland answered the bill, and contend that the failure in building the mill, was on the part of the complainant, and deny the failure on the part of Feland and the readiness of the complainant, or that he did do what he could. Feland denies that he was bound by the writing to do any part, and alleges, that by the terms of the writing, Skidmore was to do all.
The court below decreed that Moore should convey the land; but first, to ascertain whether it was paid for, empannelled a jury to value the work done. The jury assessed the value somewhat less than one hundred pounds.
This deficit was decreed to be paid to Feland before the conveyance was made. From this decree, Moore and Feland have appealed to this court.
The attention of the parties has been much drawn in the preparation of this cause, to the construction of the contract; the appellee contending and attempting to *455 prove, that by their agreement, by the construction of mill-wrights and the custom of the country, Feland was to do the part of an employer of a mill-wright, such as making the dam, digging the race, furnishing the timber, hauling it to the ground and doing the stone work, digging and building, leaving the appellee to do only that part which required the skill of the mill-wright to perform; and the appellants contending against and disproving this construction.
In deciding this cause, we will first consider the contract according to the construction given to it by the appellee; for if he had not complied with it when construed in his own way, he will not be entitled to relief, and there will be no necessity of deciding what its true legal construction is.
There is no pretension that there was a mistake made in drawing this article, as to the date when Skidmore was to have the work completed. This matter is neither alleged in the pleadings nor obviated by proof; but it requires the work to be completed by the first day of December next ensuing the date, which allowed only forty days for the completion of the work. This seems too short a time, and the parties appear, in fact, to have turned their eyes to the ensuing year for the performance of the labor; so that it is probable, that the first day of December 1810, was intended. We will consider the contract as to this date, which is as liberal as the appellee can ask, and then enquire, whether he will be entitled to any relief.
Giving all this latitude to the appellee, he has failed to prove that the appellant, Feland, failed to board him or his hands, to furnish timber or materials, or that there was either the want of dam, race or building, before the work proceeded further, or that he had to cease work for the want of these preparations on the part of his employer, or that he urged Feland to get his part ready at any time previous to the first of December, 1810. On the contrary, it is shown in proof, that Feland hurried the preparations on his own part; that he furnished a shop for the appellee to work in, who therein did the work of others; and the proof is clear, that all the mill-wright work on the mill was not done, which could have been performed without further preparation and labor on the part of Feland; and, indeed, it was not until *456 during the year 1811 or 1812, that the appellee made a show of urgency and readiness to go on with the work, by demanding of Feland to get ready and allow him to go on with the work. About this time, or rather afterwards, Feland declined prosecuting further, the building of a mill.
It is often asserted by chancellors, that specific execution of contracts by decree, is a matter of sound discretion, and not a matter of right. Parties really entitled to redress, will not always obtain specific relief, but will frequently be left to their remedy at law upon their contracts, where they can receive compensation in damages, with proper abatement for their own defalcations.
It will readily be admitted, that equity will frequently accept an offer or tender of performance, made in good faith, for performance itself, and that efforts to fulfil the part of the party seeking specific relief, extended as far as practicable for him to go, and he cannot go farther, owing to the conduct of his adversary, will be admitted in lieu of strict performance, and, thereupon, a decree specifically enforcing the stipulations, may be based.
But, at the same time, this tender and these efforts must not be colorable, but real; not presented out of time, but at the period prescribed in the contract; and the party relying on them ought to be held to show, that he really extended his efforts as far as he was capable of doing, until obstructed by the conduct of the opposite side. It will not do to present appearances only, without reality; to commence and not go to the extent, and leave part within his power to be performed, incomplete. Such conduct is justly termed in equity, trifling with the contract, and the party guilty is not entitled to specific relief. A court of law in case of dependent covenants and precedent conditions, will permit an action to lie on part performance of the plaintiff; but that court has it in its power, to prevent a compensation in damages commensurate with the counter benefit. On the contrary, specific relief in chancery, goes for the entire redress; and if the party seeking it has failed on his part, without an excuse, chancery will seldom make up to the opposite side, a compensation in damages for the defalcations of the complaining party, and compel the other side to accept it in lieu of what he ought to have had. This is virtually new-modelling *457 and substantially altering the stipulations of the parties, which the chancellor possesses no power to do.
These principles apply emphatically to the case of the complainant in this instance, and decide the right of specific relief against him. The facts show, that he had done something of some value; but not all he should or might have done, and for what he has done, he ought to be left to his action at law for an equivalent.
Decree reversed and bill dismissed, without prejudice to an action at law.